# Charleston.

MADISON McCLUNG *et al. vs.* JOHN ECHOLS.

January Term, 1872.

1. A party who is in possession under a contract, but who avoids the contract, in a suit to enforce payment of bonds under it, by reason of its being founded on Confederate treasury notes, an illegal currency, is in possession thereafter wrongfully, and is a tenant at sufferance; and it is not necessary that he should have notice to quit prior to the institution of an action of ejectment. Nor could this contract, thus annulled, avail the defendant as a valid defense in the ejectment suit, under the provisions of the Code, 1868, ch. 90, § 20.

2. Where defendants to an action of ejectment do not attempt to show title in any other person than the plaintiff, but claim under him, and seek to defend their possession by virtue of a contract of purchase, they are estopped from disputing his title.

3. It is not error of which the defendant can complain, to render a judgment in favor of the plaintiff against the *defendants only,* instead of being absolute and against *all others.*

4. Where in an action of ejectment, parties defend it jointly, and neither of them enter a disclaimer, but on the contrary, give notice with their plea of not guilty, that they jointly claimed the premises in controversy, and would rely on the trial on a contract between the plaintiff and one of the defendants; it is an admission that they were in possession and that such possession was a joint one and would be jointly defended. Hence a joint judgment was not erroneous.

Action of ejectment in the circuit court of Greenbrier county, brought to January rules, 1870. Judgment for plaintiff, John Echols, April term, 1871.

At the trial of the case, the defendants took a bill of exceptions to the ruling of the court in refusing a new trial, in which the evidence was set out.

It appeared in the proof that the plaintiff sold to McAvoy, one of the defendants, the land in controversy, lying in Greenbrier county, in 1863, and took bonds in payment; that the bonds were assigned to one B. F. Steele, who brought suit on them, in chancery, to which McAvoy was a party, and also

McClung, who bought the lands of McAvoy in 1864. This suit was determined in 1870, and the bonds were annulled and rendered void by reason of their having been executed to secure the payment of certain sums of the Confederate treasury notes, an illegal and void currency. No other evidence was offered in the case but the record of this chancery suit.

The defendants pleaded not guilty to the action of ejectment, and notice, under the statute, and a contract between the plaintiff and defendant, McAvoy, which was the contract above mentioned as having been annulled.

The defendants brought the case to this court.

*Snyder* for the appellants.

The points of error here presented, in addition to the matters stated in the assignment of errors, prefixed to the record, are the five following:

1st. Want of demand and refusal of possession, before commencement of suit.

2d. Admitting plaintiff's declarations in his own behalf.

3d. Refusing to admit the written contract, notice of which was filed with defendants' plea, as a bar to the plaintiff's action.

4th. Judgment not warranted by the finding.

5th. No sufficient proof of defendants' possession.

First. The record of this case shows that it was proven by the plaintiff, in the court below, that the defendant, McAvoy, was let into possession of the premises, which plaintiff now seeks to recover by ejectment, under a contract of purchase from the plaintiff, and that the defendant, McClung, was in under a contract of purchase from the defendant, McAvoy. No notice to quit was given to either of the defendants before suit. The following considerations show that this fact alone is sufficient to dismiss the plaintiff's action.

A person entering under a contract for the purchase of an estate, with the consent of the vendor, must be deemed a tenant at will, and cannot be ousted by ejectment, before his lawful possession is determined by demand of possession, or otherwise. *Right* vs. *Beard*, 13 East, 210.

The possession of such a tenant must be referred either to a legal or adverse title; but, as the entry is with the consent

of the person entitled to the possession, it cannot be considered adverse; and, as the agreement confers no legal title, it follows that the person in possession must, by construction of law, be considered as a tenant at will. *Doe* vs. *Jackson*, 1 Barn. & Cress., 448; 8 E. C. L. R., 126.

This view of the law is fully recognized and affirmed by the court of appeals of Virginia, in the late case of *Williamson, Trustee*, vs. *Paxton, Trustee*, 18 Grat., 505.

The suit of *Steele* vs. *McAvoy et als.*, the record of which is incorporated in the record of this case, could not have operated as a demand of possession; on the contrary, it conceded and reaffirmed the lawfulness of the defendant's possession; and, besides, that suit was not by the present plaintiff, but by one claiming no title to the land.

The lawfulness of defendants' possession was never determined before this action of ejectment was brought, either by notice to quit *or otherwise*, and the case must, consequently, be dismissed at plaintiff's cost.

See *Goodtitle* d. *Herbert* vs. *Galloway*, 4 T. R., 680; *Clayton* vs. *Blakey*, 8 T. R., 2; *Thunder* d. *Weaver* vs. *Belcher*, 3 East., 449–451; *Doe* d, *Warner* vs. *Browne*, 8 East., 165; *Hegan* vs. *Johnson*, 2 Taunt., 148; cases which decide that when a party is admitted into possession under an *invalid* lease or agreement, &c., the landlord, or vendor, &c., must demand possession, or, in some other manner, determine the will, before he can maintain an ejectment, although he has not acknowledged the party as his tenant.

Second. It is insisted, in the assignment of errors prefixed to the record of this case, that the record in the suit of *B. F. Steele* vs. *McAvoy et als.*, was improperly admitted as evidence. Besides the reasons there stated, it should be noticed that the answer of John Echols, the present plaintiff, was a part of that record, and hence the plaintiff's own declarations were admitted in this action to prove the identity of the land, and that he held the legal title thereto. If, indeed, any part of that record could have been admitted as evidence, it must have been upon principles quite obvious to every one. The parties were different from those in the present case—the subject of controversy there had no relation to this—the gist of that suit, and sole subject for decision, being the legality

or illegality of consideration of certain bonds, the right of possession to the lands being conceded to the defendants.

But, if any part of that record was evidence in this case, it must have been upon the principle that the present defendants had made solemn admissions therein, by which they were bound; and the evidence contained in that record must have then been limited to those admissions. These, if such, must have been contained in their own answers, and if the answers were evidence, it might have been proper to admit the bill and decree to show that they were made in a suit regularly begun and ended; but this reason cannot apply to the answer of Echols, the present plaintiff, and it was contrary to the rules of evidence to allow it as evidence in his own behalf.

In the case of *Pleasants* vs. *Clements*, 2 Leigh, 474, the record of a former suit, comprising depositions regularly taken therein, had been offered in evidence, and excluded by the court below, which ruling was sustained in the appellate court, on the ground that the depositions were improper evidence, and that the whole of a record must be rejected when any part is improper, and it is offered as a whole.

In the present case the record was offered as a whole, and the answer of Echols being inadmissible, the whole record should have been excluded.

Third. The written contract filed with the defendants' plea was a bar to the plaintiff's recovery, and the court should have so held. See the notice of this defense at page 19 of the record, and exhibit "X," at page 15.

The plaintiff, to obviate the effect of this defense on the trial below, relied entirely upon his evidence to show that the contract was upon an illegal consideration, and, therefore, void. But this will not do. The Code (p. 520) makes this defense peremptory. It is not necessary, under our Code, that the vendee be entitled, in equity, to a specific execution of the contract, as is provided by the Virginia Code in relation to this defense; but it was manifestly intended by our Code to give to a defendant in ejectment every advantage under this defense of which he could have availed himself if he had previously acquired the title, and thus driving the plaintiff into exactly the position he would have occupied if he had

conveyed the land by deed, reserving a vendor's lien. A comparison of the provisions of our Code with those of the Virginia Code, upon the same subject, confirms this view.

If the consideration of the written contract was illegal, the plaintiff, to avail himself of this, must have gone into equity for cancellation of the instrument.

And if the illegality of consideration could have been made the subject of investigation and decision at law, certainly that investigation was not presented by the pleadings in this case; for if the matter had been a direct subject of controversy at law, it must have been by presenting it under a special plea, and could not have been considered under the general issue. The written contract is an instrument under seal, and a specialty cannot be avoided for illegality of consideration at the common law, appearing merely in evidence, but the fact must be specially pleaded. 2 Chit. Rep., 334; 2 Stark., 35, S. C.

If the plaintiff objects to this, that the statutory rules of the action of ejectment should be construed as preventing any special pleading by him against this statutory defense, this only shows that he should have sought cancellation in equity before proceeding with his ejectment, and it is not for the plaintiff to use the argument *ab inconvenienti* against the hardships of a form of legal proceedings, which he has himself deliberately and voluntarily chosen.

Fourth. At page 8 of the record, the finding is given upon which the court rendered judgment. The reading of that finding and judgment can leave no possible doubt, in any mind, that the court stated in the finding the whole of the facts upon which the judgment was given. It is, therefore, to be treated precisely as if it had been the verdict of a jury.

The finding asserts, *in point of fact*, what is not claimed by the plaintiff's declaration, to-wit: title *in fee* to the land in controversy, and what is not proven by the evidence in the cause unless the answer of the present plaintiff in the prior suit of *Steele* vs. *McAvoy et als.*, was taken to be proof of the fact; and the judgment affirms, *in point of law*, that *title in fee* and *right of possession* are inseparable concomitants, a contradiction to which is furnished in every tenancy under a landlord. First, then, the finding was not warranted by the

declaration, which was itself radically defective in not stating, as the statute requires, the quantity of interest claimed by the plaintiff in the land, or, if this objection be considered untenable, yet, for reasons above stated, there was no competent evidence to authorize such a finding; and, lastly, admitting the facts stated in the finding to be an unimpeachable verdict, still the legal proposition involved in the judgment, as a consequence thereof, is utterly indefensible.

The defect in the declaration and evidence of the plaintiff, the insufficiency of the finding of the court, and the error in its judgment, are well illustrated by showing the verdict required under our statute on ejectment, to entitle the plaintiff to recover: "that the said Jacob McAvoy and Madison McClung are guilty of unlawfully withholding the two tracts of land in the declaration mentioned from the said John Echols; and that the said John Echols is well entitled to hold the same in fee, as the said John Echols has, in his said declaration, complained against them."

Fifth. In the ancient action of ejectment, it was holden necessary to prove the defendant in possession of the premises in dispute; but, by orders of the different courts, the consent rule is now altered in England, so as to include the confession of possession, as well as of lease, entry, and ouster. Adams on Ejectment, Waterman's Ed. (star paging), 277.

The consent rule having been abolished in our practice, the ancient doctrine is, therefore, revived, that a plaintiff in ejectment cannot succeed unless he prove the defendant to be in possession. See Note [1] to the above recited statement from Adams, where the following authorities are quoted: *Cooper* vs. *Smith*, 9 Serg. & R. Rep., 26; *Pope* vs. *Pendergrast*, 1 Marsh, Rep. (Ky.); 122; *Eastin* vs. *Rucker*, 1 Marsh. Rep. (new series). 236; *Cooley* vs. *Penfield*, 1 Verm. Rep., 244; *Stevens* vs. *Griffith*, 8 Verm. Rep., 448.

The New York statute upon ejectment is almost literally identical with that of our code, and under the New York statute are the decisions of *Jackson, ex dem., Roberts* vs. *Ives*, 9 Cow. Rep. 661 and *Van Horne* vs. *Everson*, 13 Barb. 526, in which it is held that the plaintiff in ejectment must, at the trial, prove the defendant in possession of the premises in question, or he cannot recover.

27

Concede, now, that the evidence of the plaintiff in the present case is proper; and has he proved such possession as the law requires? The possession must be possession by the defendant, at the time of declaration served. 2 Greenl. Ev. § 304.

In this case the declaration was served January 1st, 1870, or subsequent thereto. See declaration and acceptance of service, at pages 7 and 8 of the record.

The plaintiff's evidence may be taken to have proven that the defendant, McAvoy, was in possession of the disputed premises from June 27th, 1863, to February 27th, 1864, and that defendant, McClung, was in possession of said premises on the day last mentioned. This evidence, together with the endorsement of service on the declaration, is all the evidence offered by the plaintiff to prove the possession of the defendants at the time of declaration served.

A return of "served" by the sheriff, on a writ of ejectment, is certainly not *conclusive* evidence of possession by the defendant, and it cannot be *prima facie* evidence under our statute on ejectment, for the reason, among others, that our statute would not allow it to be rebutted if once taken as evidence; and, in showing this to be the proper construction of the statute, we will discuss its bearing upon the remaining branch of the plaintiff's proof of possession, viz: the proof arising from the presumption that the possession of February 27th, 1864, continued down to January 1st, 1870. Greenleaf mentions, as one illustration of the doctrine of disputable presumptions, that a seizin once proven, is presumed, until the contrary is shown, to be continued. 1 Gr. Ev. § 42. Now if our statute prevents a defendant in ejectment from disputing this presumption, then it has no effect as evidence, and the plaintiff must prove possession by other means; for, the presumption not being conclusive, if it is not disputable, is no presumption at all.

In ejectment, the gist of the action is the right of possession. Hence the fact of defendants' possession belongs to the merits of the controversy, and cannot be tried by plea in abatement; and, moreover, our statute on ejectment allows no plea in abatement to an action of ejectment. Under the plea in bar, our statute only allows such matters of defense as

would formerly have been a bar to a writ of right, and does not, like the provisions of the Virginia and New York statutes, allow the defenses heretofore admitted in the action of eject-ment. A plea of non-tenure to a writ of right, is a plea in abatement, and not in bar. 1 Rob. (old) Prac., 468 and 472, citing *Boling* vs. *Mayor, &c.,* of Petersburg, 3 Rand., 563.

It follows, therefore, that under our statute, possession in 1864 is no proof of possession in 1870, however the law may have previously stood; and that service of the declaration is no proof of the fact.

Suppose the defendants had re-delivered possession to the plaintiff on the 28th day of February, 1864, and never after exercised a single act of ownership over the land, (and, for aught that appears in the record, they may have done so,) could plaintiff, on the 1st of January, 1870, vex defendants with a law suit and charge them with its costs, by proving the land in their possession on the 27th day of February, 1864, and then applying a presumption which they could not have an opportunity to rebut by showing the fact that plaintiff was, himself, in possession? If the court hold that defend-ants' possession is established in the case before it, then, in the case supposed, plaintiff would, under our statute on ejectment, have inevitably recovered.

By our present statute on ejectment, when a defendant has pleaded "not guilty," he is exactly where the tenant stood after he had joined the *mise* on a writ of right, without hav-ing allowed him the privileges under the writ of right of pleading in abatement, since our statute compels him to plead the general issue, and then cuts him off from his former de-fenses under the general issue in ejectment; so that a defend-ant in ejectment, in West Virginia, so far as proof of his pos-session, at the date of declaration served, is concerned, is like a criminal on trial, compelled to lie passive under the evidence of the plaintiff, and, therefore, every doubt must be in his favor; and courts should demand indubitable proof of the de-fendant's possession, and not be satisfied with a single pre sumption, weak and uncertain in its effect—disputable in its nature and by all the principles of law, and yet placed, by the statute, beyond the reach of rebuttal.

For this reason the court erred in refusing the defendant's motion to set aside its judgment as being contrary to law and the evidence, no sufficient proof having been adduced of the possession of defendants.

*Price & Sperry* for appellee.

This is an action of ejectment brought to recover a tract of 208 acres of land in Greenbrier county.    The land was sold by the plaintiff to the defendant, McAvoy, to whom he gave a title bond, and took from him his five several bonds for the purchase money, which he assigned to Benjamin F. Steele, who instituted suit on the bonds, in chancery, to enforce the vendor's lien upon the land.    The defendant, McAvoy, answered, admitting the purchase, but maintaining that payment was to have been made in Confederate money; that he was placed into possession of the land and had sold it to the defendant, McClung; that no deed had been made, &c.    He exhibited with his answer the contract with McClung. The defendant, McClung, was made defendant by petition. The decree was that the purchase money was to be discharged in confederate notes, and that the bonds were illegal and void; that they had not been stamped, &c.; the bill was therefore dismissed.

After the bonds and contract were thus held void and the bill dismissed, the plaintiff instituted his action of ejectment against McAvoy and McClung for the land and recovered judgment.    From this judgment an appeal has been taken, which is the case now upon hearing.

Upon the trial the defendants took one bill of exceptions to the judgment of the court, and that was for "failing to set aside the judgment because it was contrary to the law and the evidence."

In this bill of exceptions all the facts were set out, which consist of the bill aforesaid, exhibits, petition, answers, and decree.

The defendants object to the judgment, for a multitude of reasons:

First. Because of the inadmissibility of the parts of the record aforesaid as evidence; but this objection cannot now

be made, as the opinion of the court was not excepted to admitting the evidence. " It was read under the protest and objection of the defendants, but when the protest and objection were overruled they acquiesced." *White* vs. *Tonkey*, 9 Leigh, 347, 351–2. But the objection was not valid if it had been well presented upon the record. The contract on pages 15 and 16 of the record were admissible, to show under what title the defendants entered—the one entered as purchaser, the other as sub-purchaser, from the plaintiff, and could not, therefore, question the plaintiff's title. 2 Tuck. Com. 176. C. John R., 34; 1 Rob. Prac. (old), 446. The decree was introduced to show that the sale to McAvoy had been void, and which necessarily terminated the defendant's right of possession.

Second. Was not the plaintiff entitled to the possession? As between him and these vendors, his title could not be questioned; and, having the title to the land, it would draw to it the right of possession. *Emerick* vs. *Tavner*, 9 Grat., 220; 7 John R., 157; 14 East., 488; 1 Rob. Prac., 466.

Third. The defendants were not entitled to notice to quit. Tillinghast's Adams on Equity, 116–7 and authorities referred to. The doctrine is not such as the defendant's counsel contends for. It is not the doctrine as between vendor and vendee. The vendor has a right at any time to elect to treat his vendee as a dississor, if he will. Adams on Equity, 116, 117; *Whiteside* vs. *Jackson*, 1 Wendle, 418; *Jackson* vs. *Miller*, 7 Cowan, 747, and other authorities there referred to. In this case the contract had been declared null and void, and the tenant thenceforth was necessarily a trespasser.

Fourth. The defense accorded to a vendee by the act of assembly in favor of vendors (Code, § 20, page 520,) does not apply to this case. That law is intended to apply to valid contracts. Here the contract is declared null and void. It is, therefore, as though it was not.

If this is not a correct view of the law and the defendants are correct, the anomaly is presented by the law of a vendee holding possession of the land and not only failing to pay for it, but his failure to pay and his right to hold both sanctioned by the courts and the law. The finding of the court cured

the supposed error in the declaration. Code, § 3, page 637, and § 8, page 626.

BERKSHIRE, P. The only question properly made in this record, is the ruling of the circuit court upon the defendant's motion for a new trial.

It is true that a question was raised here, that the court erred in admitting the plaintiffs' evidence on the trial, which evidence consisted wholly of a copy of the record of the chancery suit between Benjamin F. Steele and the plaintiff and defendants in this action. But as no such question was reserved in the record, it cannot be considered here.

The appellants now insist that they were entitled to notice to quit prior to the institution of the suit, for the reason that they were in possession of the premises in controversy under a contract of purchase from the appellee, by the appellant, McAvoy, and that therefore they were, in judgment of law, the tenants at will of the appellee, and entitled to such notice. This might be the case if nothing had occurred to change that relation since the purchase and possession under it. But it appears from the record that by a decree rendered in the suit of Steel *vs.* the parties to this controversy before referred to, which decree has not been reversed or annulled, this contract was, in effect, declared null and void, if not at the instance of the appellants themselves, at least on account of the illegal consideration suggested by them; and consequently their possession became wrongful thereafter, and they must therefore be regarded as tenants at sufferance, and were not entitled to notice to quit prior to the institution of the suit. 3 Tucker Com., 82, 86; *Williamson, Trustee, vs. Paxton, Trustee,* 18 Grat., 475. Nor could the contract thus annulled avail the defendants, as was claimed, as a valid defense under the provisions of the Code of West Virginia, ch. 90, § 20, p. 520.

It was also argued that the appellee failed to show any title to the land in controversy sufficient to entitle him to recover in this action. This objection is not tenable. The appellants did not attempt to show title in any other person than the appellee. But on the contrary, they claimed under him, and sought to defend their possession under the contract of pur-

chase by the appellant, McAvoy, from the appellee, and were therefore estopped from disputing *his* title.   2 Tucker Com., 176; *Emerick & Co.* vs. *Tavener*, 9 Grat., 220.

It was further insisted by the appellants that the judgment rendered by the circuit court is erroneous, because it found that the appellee had title to the premises, as against the defendants, instead of being absolute and against *all others ;* and also because the judgment was rendered against the appellants jointly, while it was claimed one of them (McAvoy) was shown to have no interest in the said premises.   There is certainly nothing in the form of the finding of the court of which the appellants can justly complain; nor as I think, in rendering judgment against both of them.   They defended the action jointly; neither of them entered any disclaimer, but on the contrary, they gave notice with their plea of not guilty, that they jointly claimed the premises in controversy, and would rely, on the trial, on the said contract between the appellee and the appellant, McAvoy; thus admitting not only that they were then in possession, but that such possession was a joint one, and would be jointly defended.   *Emerick & Co.* vs. *Tavener.*

No error, therefore, is seen in the judgment complained of, and it must be affirmed, with costs and damages.

The other judges concurred.

JUDGMENT AFFIRMED.